## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## SPARTANBURG DIVISION

| | |
|---|---|
| Freda Butler-Bohn, ) | Civil Action No. 7:22-cv-00156-TMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| Walmart, Inc., Walmart Stores East, ) | |
| LP, and Walmart Associates, Inc., ) | |
| ) | |
| Defendants. ) | |

Plaintiff Freda Butler-Bohn ("Plaintiff") initiated this action against Defendants Walmart, Inc., Walmart Stores East, LP, and Walmart Associates, Inc., which Plaintiff asserts "are an integrated operation that constitute a single employer for purposes of the [ADA]." (ECF No. 80 at 1). Defendants did not object to or otherwise dispute this assertion; accordingly, the court, for ease of reference, will refer to the Walmart defendants in the singular—as "Defendant." Plaintiff alleges Defendant violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. (ECF No. 1). In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), this matter was referred to a magistrate judge for pretrial handling.

Defendant filed a motion for summary judgment. (ECF No. 54). Plaintiff filed a response in opposition to summary judgment and certain sealed documents, (ECF Nos. 57; 58; 72), and then Defendant filed a reply in support of summary judgment (ECF No. 65). Subsequently, with leave of court, Defendant filed a supplemental brief in support of summary judgment and records received from the Social Security Administration ("SSA") (ECF No. 78), and Plaintiff filed a brief in response to Defendant's supplemental brief (ECF No. 79).

1

Now before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court grant in part and deny in part Defendant's motion for summary judgment. (ECF No. 80). Plaintiff and Defendant both filed objections to the Report (ECF Nos. 82; 83), and both parties filed replies to the objections (ECF Nos. 84; 85). After carefully reviewing the record and the submissions of the parties, the court concludes a hearing is unnecessary to decide this matter.

**Facts and Procedural Posture**

Plaintiff suffers from a form of muscular dystrophy ("MD") which requires her to use a walker or, for longer distances, a wheelchair. (ECF No. 57-1 at 37). On January 25, 2021, Plaintiff applied for employment as a cashier at a Walmart Supercenter Store 1035 located near Spartanburg South Carolina. (ECF No. 57-2). Plaintiff indicated she wanted part-time employment on Mondays, Wednesdays and Fridays from 8:00 am to 4 pm. (ECF No. 54-8). In February 2021, Walmart conducted a telephone interview of Plaintiff during which Plaintiff disclosed she used a wheelchair, and the Walmart manager conducting the interview suggested Plaintiff might be better suited to work as a fitting room attendant than a cashier. (ECF No. 57-1 at 61–64). Consistent with Walmart policy, Plaintiff amended her application to include the fitting room attendant position mentioned during the interview, *id*. at 62–63, 72, as well as other positions not relevant here.

On March 2, 2021, Plaintiff received an email from Walmart offering her full-time employment as a fitting-room associate. (ECF Nos. 54-7; 54-10; 57-1 at 64). The email provided a link for Plaintiff to complete the hiring process and advised that the job offer link would expire in twenty-four (24) hours. (ECF No. 54-10 at 2). According to Plaintiff, she completed the process and accepted the position by following the link within 24 hours and indicated the system "took the

2

acceptance." (ECF No. 54-7 at 65–66).[1]  Subsequently, Plaintiff telephoned Store 1035 to learn about the next steps, and a male manager told her she would receive an email about orientation. (ECF No. 57-1 at 68).  Plaintiff then followed up in person around March 7–9, 2021, entering Store 1035 in her wheelchair and asking to speak with a manager. (ECF No 54-7 at 73, 77).  Plaintiff spoke to a "manager-type person" who Plaintiff perceived as "look[ing] at [her] funny . . . like 'Why you want a job?'" *Id*. at 77-78. The manager promised, however, to leave a note with Plaintiff's contact information on the manager's desk. *Id*.

On March 12, 2021, Plaintiff received the following email from Walmart:

> Hello Freda,
>
> Thank you for your interest in joining the Walmart family!  We appreciate the time you took to apply with us and just wanted you to know we received your application for **FITTING ROOM ASSOC** at **Walmart at 141 DORMAN CENTRE DR, SPARTANBURG, SC, Facility number is 1,035.**
>
> Unfortunately, at this time we have decided not to move forward as we've had other candidates who are more qualified for the position.
>
> We wish you all the best!
>
> The Walmart Team
> * *This account is not monitored, so please do not reply.*

(ECF No. 54-11).

On July 2, 2021, Plaintiff used Walmart's "Open Door" procedure—a resource for current employees, former employees or prospective employees to report suggestions or concerns to Walmart (ECF No. 54-1 at 3 n.4)—to register a complaint about Walmart's withdrawal of the job it had offered and she had accepted. (ECF Nos. 54-7 at 91–92; 54-17 at 38).  Plaintiff claims she

---

[1] The process of accepting Walmart's offer involved five steps: (1) "Contact Info"; (2) "Availability"; (3) "Review Offer"; (4) "Acknowledge Offer"; and (5) "Background Check." (ECF No. 54-10 at 3). The record before the court includes a screenshot of links to these five steps appearing on Walmart's website with steps 1 and 2 highlighted in blue, step 3 highlighted in green, and steps 4 and 5 not highlighted but appearing in light gray. *Id*.  Walmart contends that the screenshot indicates that steps 4 and 5 were not completed; however, Walmart's Rule 30(b)(6) deponent also conceded that the screenshot could have been made at any point in the process—that is, the screenshot does not negate the possibility that Plaintiff completed steps 4 and 5 after saving the screenshot.  (ECF No. 54-3 at 26–27).

reported that after having received an offer letter, she went to the store in person in her wheelchair and received a "look" from the acting manager and then later received the rejection email. (ECF No. 57-1 at 36). Cynthia Morrison, a member of Walmart's Open Door team, was assigned to investigate Plaintiff's report. Morrison sent Plaintiff an email on July 2, 2021, indicating that she wished to discuss Plaintiff's complaint, and Plaintiff responded almost immediately to provide Morrison with the time Plaintiff was available to do so. (ECF Nos. 57-10 at 8–9; 57-3 at 48–50). After receiving no response from Morrison, Plaintiff called Morrison on July 6, 2021, but was unable to reach her. An internal message was sent to Morrison indicating Plaintiff had called about her Open Door complaint.

On July 28, 2021, Defendant received notice that Plaintiff had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 57-11). After Walmart received notice of the EEOC complaint, Morrison returned Plaintiff's call from earlier that month and left a voicemail. (ECF No. 54-17 at 62–63). Morrison then began conducting interviews of various employees, including Human Resources representatives, the store manager for Store 1035, and a market coordinator. According to Morrison, during these interviews she was told that Plaintiff's name was in the recruiting system and that she had passed assessments administered to her but that Plaintiff's name was not tied to any requisition. (ECF No. 54-17 at 7, 32–33). When a manager wishes to fill an open position, he or she initiates a requisition and Defendant's system automatically creates a list of potential candidates from current employees and from prospective employees who have already indicated an interest in the open position. (ECF Nos. 54-18 at 2–6; 72-2 at 2; 72-3). The store manager, Trysh Droze, indicated Plaintiff's name was not familiar and that the apparel position had been filled but suggested Plaintiff could submit another employment application for currently open positions, including

4

front end and customer host positions. (ECF No. 54-18 at 3). Morrison chose not to interview Douglas Tucker, an assistant manager in apparel at the time Plaintiff applied, or Amanda Guthrie, who Droze identified as possibly involved in employment interviews during the relevant time period. (ECF Nos. 57-3 at 74; 54-18 at 3). Morrison closed the investigation on July 30, 2021, and left a voice mail for Plaintiff indicating that Morrison was unable to find any employment offers to Plaintiff in the system, that the fitting room positions had been filled, but that Plaintiff could submit another application. (ECF Nos. 54-7 at 107–08; 54-17 at 82–83).

In response to Plaintiff's EEOC charge, Defendant responded that Plaintiff "did not accept the job offer, [and] the position was not filled and actually remains open." (ECF No. 44-7 at 4). Defendant further stated in its EEOC response that it had "not hired any Fitting Room Associates [for store 1035] since [Plaintiff's] application." *Id*. at 3. Defendant's 30(b)(6) designee, however, testified that the position was closed on March 31, 2021. (ECF No. 54-3 at 98-99, 132-33). According to Defendant's designee, Plaintiff was offered the fitting room job but failed to complete acceptance of the offer, and, therefore, the offer was withdrawn. *Id.* Defendant now takes the position in its memorandum in support of summary judgment that the position was closed as a result of COVID-19 protocols being followed at that time. (ECF No. 54-1 at 19).

With respect to the cashier position sought by Plaintiff, Defendant's internal documents reflect that a requisition for the cashier position was initiated on January 29, 2021, filled by a current Walmart employee, and then closed on the same day. (ECF No. 54-14). Defendant's Rule 30(b)(6) designee testified that the money center cashier position tended to be filled internally by entry-level employees seeking to advance towards management and that, in this case, "the hiring manager for that position was hiring an internal applicant for a promotion opportunity." (ECF No. 57-2 at 50).

5

**Magistrate Judge's Report**

The magistrate judge analyzed Plaintiff's failure to hire claims under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (ECF No. 80 at 15–24). The magistrate judge correctly recognized that, "[u]sing this framework, a plaintiff can advance a claim for disability discrimination under the ADA by establishing a *prima facie* case of discrimination," (ECF No. 80 at 15), and elaborated as follows:

> Under the *McDonnell Douglas* framework, a plaintiff must first establish a failure to hire *prima facie* case of disability discrimination with evidence demonstrating that (1) she qualifies as a person with a disability; (2) she applied for a vacant position; (3) for which she is qualified; and (4) her disability played a motivating role in the defendant's refusal to hire her. *E.E.O.C. v. Cracker Barrel Old Country Store, Inc.*, C.A. No. 8:18-cv-02674-PX, 2020 WL 247305, at *3 (D. Md. Jan. 16, 2020) (citing *Martell v. Sparrows Point Scrap Processing, LLC*, 214 F. Supp.2d 527, 528 (D. Md. 2002)). *See Baird v. Rose*, 192 F.3d 462, 466, 470 (4th Cir. 1999)).

(ECF No. 80 at 16).

> Once a plaintiff has made a prima facie case, the burden of production shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the employer does so, then the burden returns to the plaintiff, who must prove by a preponderance of the evidence "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). *See Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 575-76 (4th Cir. 2015).

(ECF No. 80 at 15).

*Qualified to Perform and Social Security Disability Benefits*

The magistrate judge first considered Defendant's argument that Plaintiff cannot establish a prima facie case of disability discrimination because she cannot show she was qualified for the position for which she applied—*i.e.*, that she was able, with accommodation, to perform the essential functions of the position. *Id*. at 16–18. Defendant's position is based on Plaintiff's

receipt, since 2006, of total disability benefits from the SSA. In applying for social security disability benefits, Plaintiff took the position before the SSA that she was unable to work full time beginning in September 2005, that she was unable to do a standing job, and that she could not do a full-time sitting job because of her hips. (ECF No. 78-2 at 7). The SSA determined that Plaintiff became fully disabled on November 1, 2005. (ECF No. 78-1 at 3). During the time period in which Plaintiff was applying for employment with Defendant, she received $1,513 per month in social security disability benefits, (ECF No. 78-3), which were approved for continuation on January 25, 2023 (ECF No. 78-4). Defendant contends that because Plaintiff has received total disability benefits since 2006, she cannot establish that she is able to perform the essentially functions of the position for which she applied.

The magistrate judge correctly recognized that the receipt of social security disability benefits does not, in and of itself, defeat a subsequent ADA claim. (ECF No. 80 at 17 (quoting *Fox v. General Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001)). As explained in *Fox*, "the two statutes . . . require different, though related, inquiries into an individual's disability" as "the ADA considers a plaintiff to be a qualified individual with a disability if he is able to perform the job in question with reasonable accommodation, whereas . . . the Social Security Act [does] not consider the possibility of reasonable accommodation." 247 F.3d at 177 (internal quotation marks omitted). But, "because of the possibility of inconsistency, to avoid summary judgment, an ADA plaintiff who is shown to have claimed total disability in the context of another statutory scheme is required to proffer a sufficient explanation for any apparent contradiction between the two claims." *Id*. (internal quotation marks omitted). The magistrate judge noted specifically that the Social Security Administration "sometimes grants SSDI benefits to individuals who not only can work, but are working" and that "to facilitate a disabled person's reentry into the workforce, the SSA

authorizes a 9–month trial-work period during which SSDI recipients may receive full benefits." (EF No. 80 at 18 (quoting *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 805 (1999)). The magistrate judge then concluded that Plaintiff proffered a sufficient explanation to permit her claim to proceed despite her receipt of social security benefits, having testified that "she was aware of the opportunity to work while receiving disability benefits [(ECF Nos. 57-1, at 74; 74); see (ECF No. 57)], and she currently works approximately twenty hours per week as a health care assistant." *Id*.

*Cashier Position*

With respect to whether Plaintiff can establish a prima facie case as to her failure to hire claim for the cashier position, the magistrate judge "found absolutely no evidence before the court that [Defendant] had any knowledge of the plaintiff's disability" before filling the position with an internal hire. *Id*. at 19. The magistrate judge noted that "[t]he only documentary evidence before the court of an open cashier position while the plaintiff had an active application" is "[Defendant's] database spreadsheet showing that a money center cashier requisition was opened, filled . . . and closed all in one day, on January 29, 2021" but that Plaintiff did not tell Defendant about her disability until late February 2021 during a telephone interview. *Id*. Accordingly, the magistrate judge determined that "[P]laintiff cannot show that her disability played a motivating role in [Defendant's] refusal to hire her for the money center cashier position," *id*. at 19, and recommended the court grant Defendant's motion for summary judgment as to the failure to hire money center cashier claim, *id*. at 20. Additionally, for the same reason, the magistrate judge recommended that the court grant Plaintiff's failure to accommodate claim relating to the cashier position . *Id*. at 24–25.

*Fitting Room Associate Position*

8

The magistrate judge determined that Plaintiff offered sufficient evidence to establish a prima facie case that her disability played a motivating role in Defendant's rejection of Plaintiff's employment as a fitting room attendant. *Id*. at 20–21. As explained in the Report:

> While [Defendant] argues that the plaintiff did not complete the hiring process, ample evidence suggest otherwise, making this a dispute of fact best left for resolution at trial. Specifically, the plaintiff affirmatively testified that she accepted the offer for the fitting room attendant position within the required twenty-four hours (doc. 57-1, pl. dep. 65-69). The plaintiff further testified that she called Walmart again and spoke with the male manager and asked "what would be the next step. . . . What would I need to do? He said to give it about six days or so, and I would get an email about orientation" (doc. 57-1, pl. dep. 68). Further, the plaintiff has presented evidence that shortly after learning of her disability, Walmart sent an email to the plaintiff stating that it would not "move forward" with the fitting room attendant position because it had "other candidates who are more qualified" (doc. 54-11 at 2). Based on the foregoing, as issues of material fact remain, the undersigned recommends that district court find that the plaintiff has sufficiently advanced a prima facie case for the purpose of a motion for summary judgment motion.

*Id*. at 21 (footnote omitted).

The magistrate judge assumed that Defendant satisfied its burden of showing a legitimate, non-discriminatory reason for refusing to hire Plaintiff, but ultimately concluded that Plaintiff had proffered sufficient evidence to show Defendant's non-discriminatory reason was mere pretext for discrimination. *Id*. at 22. The magistrate judge based this conclusion on Defendant's having offered various different reasons—the Report lists seven of them—for not hiring Plaintiff for the fitting room position in response to the EEOC charge and during this litigation. *Id*. at 22–23. Additionally, the magistrate judge determined that evidence that Morrison's Open Door investigation was deficient supported a finding of pretext. *Id*. at 24.[2]

---

[2] The Report notes the following evidence:

> [T]he evidence before the court shows that Ms. Morrison failed to interview either Mr. Tucker, the hiring manager for the fitting room associate position, or Ms. Guthrie, the team lead who was doing much of the interviewing at the pertinent time. Moreover, she did not return the plaintiff's telephone calls for several weeks, and, when she did call the plaintiff back and leave a message on the day she closed the investigation, Ms. Morrison stated that she was unable to find that any kind of offer was

9

In sum, the magistrate judge recommended the court grant Defendant's motion for summary judgment (ECF No. 54) as to the failure to hire/failure to accommodate for the money center cashier position and deny Defendant's motion for summary judgment (ECF No. 54) as to the failure to hire Plaintiff for the fitting room associate position. (ECF No. 80 at 25).

**Standards of Review**

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). Thus, "[t]o trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Elijah*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017); *see also Elijah*, 66 F.4th at 460 (noting that "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only"). Furthermore, "'the court is not obligated to consider new arguments raised by a party for the first

---

made to the plaintiff, which Walmart now admits was untrue. Ms. Morrison then closed the investigation without ever actually speaking with the plaintiff and without ever reviewing a single document about the plaintiff from any Walmart system.

(ECF No. 80 at 24).

time in objections to the magistrate's Report.'" *Floyd v. City of Spartanburg S.C.*, Civ. A. No. 7:20-cv-1305-TMC, 2022 WL 796819, at *9 (D.S.C. Mar. 16, 2022) (quoting *Elliott v. Oldcastle Lawn & Garden, Inc.*, No. 2:16-cv-01929-DCN, 2017 WL 1206408, at *3 (D.S.C. Mar. 31, 2017); *see also Elijah*, 66 F.4th at 460 n. 3 (noting "district court judges are not required to consider new arguments posed in objections to the magistrate's recommendation").

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Phillips v. Nlyte Software Am. Ltd.*, 615 Fed. App'x 151, 152 (4th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"'In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party.'" *Sellers v. Keller Unlimited LLC*, 388 F. Supp. 3d 646, 649 (D.S.C. 2019) (quoting *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996)).  However, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *McKinney v. G4S Gov't Sols., Inc.*, 711 Fed. App'x 130, 134 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The moving party has the burden of proving that summary

judgment is appropriate. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc.*, 736 Fed. App'x 400, 400 (4th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322–23). Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).

## Discussion

### Defendant's Objections

A. *The Magistrate Judge Incorrectly Concludes that Plaintiff Presented Evidence That She is a Qualified Individual with a Disability*

As Defendant notes, Plaintiff must demonstrate that she is a "qualified individual with a disability," 42 U.S.C. § 12112(a), which is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions" of his or her job. 42 U.S.C. § 12111(8). (ECF No. 83 at 6). Defendant contends the magistrate judge erroneously concluded Plaintiff presented such evidence, arguing that Plaintiff's "social security records confirm that she could not perform the essential functions of the position" as Plaintiff "was deemed fully disabled by the SSA, and has received total disability benefits since 2006" and "has not worked a full-time job for over fifteen." *Id*. The magistrate judge thoroughly addressed this argument. (ECF No. 80 at 16 –18). With regard to Plaintiff's testimony that she was aware of the opportunity to work while receiving disability benefits under the SSA's 9-month trial work period and was in fact working twenty hours per week when she applied for employment, Defendant argues that the SSA only allows someone to work while receiving disability benefits "in a limited scenario where a disabled person is trying to reenter the workforce due to an improvement in the individual's physical condition or some change in the nature of the individual's disability. That is not the case

12

here." (ECF No. 83 at 7). Defendant, however, does not offer any proof that there has been no improvement in Plaintiff's position, attempt to explain why the so-called limited scenario does not apply here or provide any authority for the underlying legal proposition in the first place. The court agrees with the magistrate judge on this point for the reasons set forth in the Report and overrules Defendant's objection.[3]

B. *Defendant Knew Plaintiff Uses a Wheelchair at the Time It Offered the Fitting Room Position, Thus Defeating Plaintiff's Prima Facie Case*

As previously noted, in order to establish a prima facie failure-to-hire claim under the ADA, Plaintiff must show that she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. Defendant highlights evidence "that before [Plaintiff] received the job offer from [Defendant] on March 2, 2021, she told the individual she interviewed with over the phone that she was disabled and in a wheelchair." (ECF No. 83 at 8). According to Defendant, "[t]he undisputed fact that [Defendant] knew [Plaintiff] was in a wheelchair before it made the [fitting room associate] job offer to her" necessarily "prov[es] that Ms. Butler-Bohn was not rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Id*. at 8–9. The court disagrees. Plaintiff presented evidence that Defendant withdrew its offer not long after a store manager—different from the one who interviewed Plaintiff over the phone—saw Plaintiff in a wheelchair when Plaintiff appeared in person between March 7–9. (ECF No 54-7 at 73, 77). This is sufficient to permit a trier of fact to draw an inference of discriminatory animus.[4] The court overrules this objection.

---

[3] The court notes, additionally, Defendant's 30(b)(6) designee conceded that Defendant did not "have any information that [Plaintiff] was not qualified for any positions to which she applied." (ECF No. 85 at 2–3).

[4] To the extent Defendant relies on *Proud v Stone*, 945 F.2d 796, 797 (4th Cir. 1991), for the proposition that the offering of Plaintiff with the knowledge of her disability establishes that the later withdrawal of the offer cannot be discriminatory, the court concludes such reliance is misplaced. Defendant's argument invokes the "same-actor inference" which provides that "if the plaintiff's 'hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that

C. *The Magistrate Judge Erroneously Concluded There is a Genuine Issue of Fact as to Whether Defendant's Non-Discriminatory reason for not Employing Plaintiff was Pretextual.*

    1. *No Factfinder Could Find that Plaintiff Accepted the Fitting Room Position*

Defendant argues there is no evidence that Plaintiff completed the acceptance process with respect to the fitting room associate position; specifically, Defendant contends Plaintiff did not present any evidence that she completed step 4 or step 5 of the acceptance process and that her vague testimony that she completed acceptance of the offer is insufficient to overcome summary judgment. (ECF No. 83 at 9–10).

    This is simply untrue. As the Report explains at length:

> . . . Walmart admits that it does not know at what point in the process the plaintiff made the screenshot of the job offer link (doc. 54-3, 30(b)(6) dep. 26-27). The plaintiff testified in her deposition that she clicked the link provided, she reviewed the offer, she "just clicked 'accept' somewhere," and, as far as she could remember, the system "took the acceptance" (doc. 54-7, pl. dep. 65-66). She could not remember if the link did anything else or if she did anything else, but she testified that she "did accept the offer," and she completed all steps in the process within the required 24 hours (id. 66).
>
>     The plaintiff further testified that after she accepted the offer, she called Walmart again and spoke with the male manager and asked what the next step would be and what she needed to do; the manager told her to wait about six days, and she would get an email about orientation (doc. 57-1, pl. dep. 68). Walmart's hiring policy provides that an external applicant's name is forwarded to be scheduled for orientation after the applicant accepts a job offer (doc. 72-4 at 3).

(ECF No. 80 at 4). This evidence is sufficient to create a triable issue of fact regarding whether Plaintiff accepted the fitting room job offer. Objection overruled.

    2. *Defendant's Reasons for Withdrawing the Offer Have Been Consistent and Provide No Basis for the Magistrate Judge's Pretext Analysis*

---

discrimination was not a determining factor.'" *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 653 (4th Cir. 2021) (quoting *Proud*, 945 F.2d at 797). There is no evidence before the court that the same individual extended and withdrew the offer to Plaintiff. Accordingly, this inference does not apply here.

14

Defendant challenges the magistrate judge's determination that Defendant has advanced different reasons for the fitting room associate offer being withdrawn, thereby suggesting the reasons given were pretext for discrimination on the basis of her disability. (ECF No. 83 at 10–11). The Report lists at least seven different reasons offered by Defendant at some point to explain the fact that Plaintiff is not employed by Defendant:

> 1) Defendant's 3/12/21 email to Plaintiff that it decided not to move forward because it had other candidates "who are more qualified"; (2) Morrison's voicemail to Plaintiff "[P]ositions for the fitting room are no longer available " and testimony that she was unable "to find any kind of offer made"; (3) testimony of Defendant's 30(b)(6) designee that Plaintiff did not accept the offer for the fitting room associate position; (4) Defendant's litigation response to a motion for sanctions that "[a]fter concluding a full investigation and exhausting all avenues of potential sources of information, Defendant has been unable to definitively determine why the offer made to [the plaintiff] was later withdrawn. . . . Throughout this litigation, Walmart has made clear . . . that it does not know the specific reason why her fitting room associate offer was withdrawn"; (5) testimony of Defendant's 30(b)(6) designee that the fitting room associate position was closed on March 31, 2021; (6) Defendant's EEOC position statement that "when [the plaintiff] did not accept the job offer, the position was not filled and actually remains open"; and (7) Defendant's statement in its motion for summary judgment that the fitting room associate position was "likely not filled and ultimately closed because on March 5, 2021, the Market Manager for Market 42,. . . forwarded an email . . . , explaining that all fitting rooms should remain closed pursuant to COVID-19 protocols."

(ECF No. 80 at 22–23).

Defendant explains at length why the various pronouncements about the fitting room position sought by Plaintiff are consistent and afford no basis for a finding of pretext. (ECF No. 83 at 10–12). Defendant's explanations certainly provide alternate conclusions that a trier of fact could reach, and Defendant is free to pursue these arguments at trial. The motion before the court, however, is one of summary judgment, and the court concludes, viewing the evidence in a light most favorable to Plaintiff, a reasonable jury could conclude Defendant's explanations have been so inconsistent as to suggest pretext. Accordingly, this objection is overruled as well.

    3. *Defendant's Open Door Investigation Does Not Support a Finding of Pretext*

According to Defendant, the undisputed evidence demonstrates that Morrison "fully investigated [Plaintiff's] Open Door Complaint" and, at the very least, the investigation was not "obviously inadequate." (ECF No. 83 at 12 (quoting *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 905 (4th Cir. 2017) (noting "evidence of an obviously inadequate investigation into the employee's misconduct could tend to show that claimed employee misconduct was actually pretext for prohibited animus."))). The magistrate judge highlighted various omissions in Morrison's investigation, however, that would permit a trier of fact to conclude that the investigation was obviously inadequate, including, but not limited to, her failure to actually interview Plaintiff, the hiring manager for the position at issue, and Morrison's returning Plaintiff's call nearly one month later and only after Plaintiff filed her EEOC complaint. (ECF No. 80 at 5–9). The court agrees with the magistrate judge and overrules this objection.

**Plaintiff's Objections**

First, Plaintiff contends that the magistrate judge erroneously required her to rely on the *McDonnell Douglas* framework. (ECF No. 82 at 1). The court disagrees. The *McDonnell Douglas* burden-shifting framework is intended to assist the fact-finding process when the plaintiff is unable to present direct evidence of discrimination. *Johnson v. New York*, 49 F.3d 75, 78 (2d Cir. 1995); *see Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) ("[I]f a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case.") As the magistrate judge stated, Plaintiff may avoid summary judgment without resorting to *McDonnell Douglas* if she produces "'direct evidence of a stated purpose to discriminate and/or indirect evidence of sufficient probative force to reflect a genuine issue of material fact.'" (ECF No. 80 at 14 (quoting *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 391 (4th Cir. 2001)). The magistrate judge then determined that Plaintiff produced no such evidence. The court agrees.

Plaintiff has certainly produced circumstantial evidence—for example, her coming in person to the store and the subsequent failure to hire her for the fitting room position she had already been offered—sufficient at least to survive summary judgment under the *McDonnell Douglas* framework. Such evidence, however, was not "direct evidence of a stated purpose to discriminate and/or indirect evidence of sufficient probative force to reflect a genuine issue of material fact." *Rhoads*, 257 F.3d at 391. This objection is overruled.

Next, the court addresses Plaintiff's contention that Defendant—and then the magistrate judge—misconstrued her claim as it relates specifically to the cashier position and, therefore, focused on the wrong evidence. (ECF No. 82 at 12). The magistrate judge determined that "Walmart's documentary evidence, if accepted by the district court, shows that the money center cashier position was filled on January 29, 2021, before Walmart knew of the plaintiff's disability, and there is no evidence of other open cashier positions for which Walmart removed the plaintiff from consideration after learning of her disability." (ECF No. 80 at 25). The magistrate judge found "absolutely no evidence before the court that Walmart had any knowledge of the plaintiff's disability before [it filled the cashier position with an internal candidate]" and, therefore, concluded Plaintiff failed to present evidence that her disability was a motivating factor in Defendant's decision as to the cashier position. *Id*. at 19. Plaintiff points out that Defendant interviewed her for the cashier position in late February and it was during that phone call that Plaintiff first revealed her disability. (ECF No. 82 at 13). According to Plaintiff, "[Defendant] summarily rejected [Plaintiff] for the cashier position during the first phone call with the hiring manager. After she informed the hiring manager that she was in a wheelchair, he immediately told her that she would be better suited for a fitting room position. [DE 57 at 2-3]. That is the essence of the cashier position part of this case. . . . [Plaintiff's] store visit came after [Defendant's] offer

of employment for the fitting room position. That visit seemingly had nothing to do with the cashier position." *Id*. at 13.  As for the spreadsheet evidence reflecting the cashier position was filled prior to the phone call, Plaintiff argues a question of fact for the jury exists—why would the hiring managers be interviewing Plaintiff for a cashier position that did not exist? *Id*. at 15.  At this juncture, the court is required to view the evidence in a light most favorable to Plaintiff, affording her every reasonable inference.  The court concludes Plaintiff's claim as to the cashier position survives summary judgment.  This objection is sustained.[5]

Finally, the court addresses Plaintiff's arguments regarding the failure to accommodate claim.  The magistrate judge found that "[P]laintiff makes clear in her response to the motion for summary judgment that her failure to accommodate claim applies only to the money center cashier position" and not the fitting room position also.  (ECF No. 80 at 25). This, the Report recommends he court grant summary judgment for the same reasons it recommends granting summary judgment on the failure-to-hire claim as pertaining to the cashier position. *Id*.  The court must sustain this objection as to the cashier position for the reasons stated above.

That leaves the question of whether the failure-to-accommodate claim encompasses the fitting room position as well.  Plaintiff's summary judgment response, as noted by the magistrate judge, focuses solely on the cashier job in arguing Plaintiff's failure-to-accommodate claim. (ECF No. 57 at 33).  In her objections, Plaintiff contends that she "never limited her failure-to-hire arguments to the cashier position" but "merely provided the cashier facts as an example of the fallacy of [Defendant's] argument." (ECF No. 82 at 11).  Plaintiff's response brief certainly could

---

[5] In light of this conclusion, the court need not address Plaintiff's objections regarding the lack of foundation for Defendant's spreadsheet evidence. (ECF No. 82 at 13–15).  The court further declines to address Plaintiff's arguments that the magistrate judge cited inadmissible 30(b)(6) testimony in *favorably* recommending that the court *deny* summary judgment as to the fitting room claim. *Id*. at 17–18.  Objections to a Report should not be used as a vehicle to assert a stealth motion in limine regarding testimony a party wishes to exclude from trial.  The court takes no position and expresses no view as to Plaintiff's evidentiary arguments set forth in her objections or her reply to Defendant's objections and the parties are to infer none.

have more clearly indicated the failure-to-accommodate claim applied to both positions, and the court is sympathetic to the magistrate judge's conclusion that this claim was limited only to the cashier position.  However, Plaintiff does not expressly state that her claim is so limited, and the court, at this stage in the proceedings, is loath to infer such a limitation.  This objection is sustained.  And, finally, based on the evidence discussed at length throughout this order, the court finds that Plaintiff's failure-to-accommodate claim survives summary judgment as to both positions.

## Conclusion

For the reasons set forth above, the court respectfully adopts in part and rejects in part the excellent Report of the magistrate judge. (ECF No. 80). Defendant's motion for summary judgment (ECF No. 54) is **DENIED** in full.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
September 19, 2023